IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHELLE RENEE GARRETT,
    Plaintiff,

v.                                            Case No. 18-2508-JTM

ANDREW M. SAUL,[1]
    *Commissioner of Social Security*,
    Defendant.

MEMORANDUM AND ORDER

Michelle Renee Garrett applied for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 and supplemental social security (SSI) under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3), on January 26, 2015. The Commissioner of Social Security denied her application on upon initial review (on June 19, 2015), and on reconsideration (on November 13, 2015). Garrett sought review by an Administrative Law Judge (ALJ). Following a hearing on April 11, 2017, the ALJ determined that Garrett was not disabled within the meaning of the Act. (Tr. 16-30). The decision of the Commissioner became final when the Appeals Council declined Garrett's request for review on July 26, 2016.

Garrett then filed this appeal, raising three arguments. First, she contends that the ALJ erred in failing to find that her knee and shoulder pain were not severe

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019, and is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d).

impairments. Second, she argues that the ALJ erroneously determined a residual functional capacity (RFC) which would allow her to perform other work in the national economy. Third, she contends that the ALJ erroneously weighed the medical evidence in the record. For the reasons provided herein, the court finds that the Commissioner's decision was supported by substantial evidence contained in the record, and the decision of the Commissioner is affirmed.

Plaintiff-claimant has stated that she became disabled beginning July 20, 2011 due to ailments including fibromyalgia, depression, asthma, insomnia, anxiety, disorders of the cervical and lumbar spine, hypothyroidism, hypertension, and pre-diabetes.[2] At the hearing, she also stated that she suffers from chronic obstructive pulmonary disorder (COPD) and carpal tunnel syndrome, but the ALJ noted that while COPD is mentioned in Garrett's medical records, there is no objective information showing a negative effect on her lung functioning, and that the condition did not appear to be severe. The carpal tunnel condition appeared to be fully corrected by surgery. The ALJ did determine that the reported fibromyalgia, depression, anxiety, and spinal disorders were severe impairments, but that these did not rise to the level of any listed impairment.

The ALJ ultimately determined that Garrett retained the RFC to allow light work, with the specified limitations. She can walk or stand (each) for 6 hours of an 8-hour workday, and can frequently lift 10 pounds. She can occasionally lift and carry 20

---

[2] Garrett's current application for benefits includes new impairments which were not included in her previous application which was submitted in 2012.

pounds, climb stairs, stoop, crouch, kneel, balance, reach or handle overhead, and interact with co-workers. She cannot climb (ropes, scaffolds, or ladders), crawl, have prolonged exposure to cold temperature extremes or vibrating machinery, or interact with the general public.

Garrett was born October 13, 1967. She has previously worked as a machine operator and hand match supervisor. The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion (Tr. 18-29) and the brief of the petitioner (Dkt. 13, at 3-18) and discussed within the argument section of the Commissioner's response (Dkt. 14, at 4-10).

Under the Act, the court takes as conclusive the factual findings of the Commissioner so long as these are "supported by substantial evidence." 42 U.S.C. § 405(g). The court thus looks to whether those factual findings have such support, and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence" means "more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 WL 3001753, *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). In making this determination, the court must "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

A claimant is disabled if he or she suffers from "a physical or mental impairment" which stops the claimant "from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 WL 3001753, *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 WL 3001753, at *2.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do

4

physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 WL 3001753, *2 (citing *Williams*, 844 F.2d at 751). The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084. The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

The plaintiff argues that the ALJ erred by failing to determine at Step 2 that her shoulder and knee pain were severe. The court finds no error, as the ALJ did determine that some impairments (including Garrett's depression), were severe. He then proceeded to conduct a full RFC analysis at Step 3, which included particularized references to Garrett's physical condition. (And, as the court finds below, that RFC assessment was supported by substantial evidence). The failure to denominate some of Garrett's impairments as "severe" at an earlier part of the 5 Step sequential process is not reversible err. *See Allman v. Colvin*, 813 F.3d 1326,1330 (105h Cir. 2016).

And the court does find that the RFC adopted by the ALJ is supported by substantial evidence, and the ALJ did not err in failing to consider evidence relating to her shoulder and knee impairments. With respect to these physical limitations, the ALJ

5

specifically referenced medical records of the imaging of Garrett's shoulders and knees, her ability to walk with normal gait and a lack of swelling in the joints, good range of motion, normal strength and sensation, and the ability to walk without a cane or other assistive device. The ALJ further noted that these findings were consistent with two consulting sources and with the reviewing state agency physician.

The plaintiff correctly notes that there is evidence in the record showing tenderness to her knees and an instance of observed antalgic gait, but these indications are limited in number and severity. She also notes the extent of her shoulder pain, and her inability to grasp or handle objects.

However, much of the evidence cited by Garrett simply reflects her own subjective impression of her condition. The ALJ noted that when Dr. Tim Roberts, D.O., examined Garrett on July 12, 2014, he noted that no assistive device was required, and that Garrett showed no difficult in getting on and off the examining table, and only mild difficulty in heel and toe walking, in squatting, and in arising from a seated position; the only activity where she showed even moderate difficulty was hopping. (Tr. 591). He ultimately agreed that Garrett reported "diffuse muscle discomfort," with a "slight reduction in rotational plain," but concluded:

> Gait and station do appear stable. No assistive device is mandatory. MRI of the right knee had shown a lateral meniscus tear. Today, she does not have joint effusion, although pain and preserved range of motion. Again, station appears stable. Grip and dexterity is preserved.

(Tr. 592). The objective medical evidence does not document any significant basis for finding that Garrett had any substantial problems with her hands. The ALJ considered

6

all the relevant evidence, including evidence relating to her social functioning,[3] and adopted an RFC which addresses the limitations which are supported by substantial evidence, by limiting Garrett from overhead handling, precluding her from contact with the general public, and that she have only occasional interaction with co-workers. The court finds no error in the assessment of Garrett's RFC.

Plaintiff also argues that the ALJ erred in giving little weight of consulting examining psychologist David Pulcher. Given her depression and anxiety "together with her self-reported ongoing pain," Pulcher concludes that these "would appear to make successful functioning in an employment setting very unlikely at this time." (Tr. 1043).

As a general rule, an ALJ must consider and weigh all medical opinions. *See* 20 C.F.R. § 404.1527(b)-(c) (stating that "we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive" and "[r]egardless of its source, we will evaluate every medical opinion we receive."). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still

---

[3] The ALJ found that Garrett had "a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating persisting, or maintaining pace; and a mild limitation in adapting or managing oneself." Tr. 21. The ALJ reached theese conclusions in determining whether Garrett met the listed Paragraph B impairment at Step 2. The underlying evidence is the reports of reviewing state psychologists Robert Blum (June 29, 2015), and Carol Adams (November 13, 2015). Both Blum and Adams agreed that, albeit with a moderate pace, Garrett retains the ability for competitive work. (Tr. 96, 129).

7

do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

Absent assigning controlling weight, an ALJ must consider the six specific factors set out in 20 C.F.R. § 404.1527(c)(1)-(6) in determining how much weight to accord the opinion of a treating physician. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotations omitted). Although there is no requirement that an ALJ conduct a factor-by-factor analysis, his opinion must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (citation and quotation marks omitted). When an ALJ completely rejects an opinion of a treating source, he must state specific and legitimate reasons for the decision. *Watkins*, 350 F.3d at 1300. Failure to apply the correct legal standards in weighing the opinion of a treating physician may result in a reversal and remand. *Goatcher v. U.S. Dept. of Health & Human Servs.*, 52 F.3d 288, 289 (10th Cir. 1995).

Here, however, the ALJ had substantial reasons for assessing little weight to Pulcher's ultimate conclusion. That ultimate conclusion was at variance by the rest of the evidence in the record, and was

> not supported by the medical evidence of record and the claimant's lack of consistent treatment and symptom relief with medication compliance. In addition, this was a onetime interaction and no treating relationship existed. Dr. Pulcher's opinion is based on the claimant's depressed manner but is not consistent with functioning on the various mental status tests found throughout the record and is at variance with the impression of January 2015 as discussed above, when she reported doing quite well and characterized her memory and concentration as good.

(Tr. 26) (record citations omitted). These were fair conclusions in the light of the evidence, and the ALJ could also properly note that Pulcher's opinion stood in contrast to the consultative reviews by Blum and Adams, which showed that Garrett did suffer from depression but that "no significant work-related functional limitations were recommended." (Tr. 25). Given treatment and therapy, Garrett responded well. Both Blum and Adams agreed that, while Garrett should have some limitations on her interactions with others (which were adopted into the RFC), she still had the ability to work. (Tr. 26). A psychological consultative examination by Karen Jordan was similar — Garret's mental condition created some limitations for her, but did not preclude her from doing simple work.

IT IS THEREFORE ORDERED this day of September, 2019, that the judgment of the Commissioner is affirmed.

s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE